Rodney W. Bell (CA SBN 125314)
*rbell@changcote.com*
Audrey L. Khoo (CA SBN 254007)
*akhoo@changcote.com*
CHANG & COTÉ, LLP
17700 Castleton St., Suite 238
City of Industry, CA 91748
Telephone:  (626) 854-2112
Facsimile:  (626) 854-2120

*Attorneys for Plaintiff,*
SANTOS ELECTRONICS INC.,
dba OSD Audio

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SANTOS ELECTRONICS INC., a California corporation doing business under the fictitious name OSD Audio,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>HOMNI ELECTRONICS COMPANY LIMITED, a Republic of China limited company,<br><br>*Defendant.* | Case No. 8:24-cv-458<br><br>**COMPLAINT FOR:**<br><br>1. BREACH OF CONTRACT;<br>2. FRAUDULENT CONCEALMENT;<br>3. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;<br>4. EQUITABLE INDEMNITY;<br>5. IMPLIED CONTRACTUAL INDEMNITY<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Santos Electronics Inc. complains and alleges as follows:

**JURISDICTION AND VENUE**

1.  Plaintiff is a citizen of California and Defendant Homni Electronics Company Limited (hereinafter, "HOMNI") is a foreign entity and citizen of Taiwan

-1-
COMPLAINT

(the Republic of China). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332, subdivision (a) because there is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.

2. The venue is proper in the Central District of California because, pursuant to 28 U.S.C. section 1391, subdivision (b)(2), a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

3. Plaintiff Santos Electronics Inc. dba OSD Audio (hereinafter, "OSDA") is a corporation duly formed under the laws of the State of California. Its principal place of business is in the County of Orange, State of California.

4. Plaintiff is informed and believes, and thereon alleges that Defendant HOMNI ELECTRONICS COMPANY LIMITED is a limited company formed and operating under the laws of the Republic of China with its principal place of business located at 3F, No. 162, Sec. 2, Zhongshan N. Rd., Zhongshan Dist., Taipei City 104, Taiwan (R.O.C.).

## GENERAL ALLEGATIONS

5. Plaintiff OSDA markets and sells electronic audio components under its own "OSD Audio," "BLACK Series," and "OSD Nero" trademarks in the direct-to-consumer ("DTC") market. This means that the overwhelming majority of OSDA's sales come from consumer purchases made on its own website and at online marketplace sites such as Amazon.com and Crutchfield.com, rather than through middlemen such as distributors and brick-and-mortar retailers.

6. Defendant HOMNI is a designer and manufacturer of electronic audio components. Plaintiff is informed and believes, and thereon alleges that HOMNI's business model includes selling its own products to consumers in the DTC space under HOMNI-owned trade names that include Carver and Carver Professional. At

the same time, HOMNI operates as an original design manufacturer ("ODM"). An ODM is a manufacturer that works with its clients to develop and manufacture products to the clients' specifications that will then be marketed and sold under its clients' trade names.

7. Since 2013 OSDA has developed certain categories of its product line as a client of HOMNI's ODM services. Relevant to the allegations herein is a series of multi-channel amplifiers that OSDA co-developed with HOMNI. This collaboration resulted in the creation of, among other items, the OSD Audio XA5180 five-channel amplifier.

8. As is customary in ODM relationships in the electronic component industry, with the finalization of the specifications and design of the XA5180, HOMNI provided OSDA with a digital template for an Owner's Manual. The template furnished by HOMNI contained English-language text, diagrams and images that included hazard warnings, information on care and troubleshooting and detailed operating instructions. It also featured HOMNI's own "Carver" trade name and logo throughout and thus it was readily apparent that the manual that HOMNI provided pertained to the Carver Model HTA5A. The Model HTA5A is the HOMNI five-channel amplifier product from which the XA5180 was derived. The manual template was delivered to OSDA by HOMNI personnel in December 2016.

9. Prior to offering the XA5180 for sale, OSDA made some cosmetic alterations to the HOMNI-provided template to replace its various "Carver" references with OSDA's own proprietary marks but left HOMNI's original content substantively unchanged. The revised template was then returned to HOMNI, whose personnel reviewed it, printed it, and packaged a copy of it with each XA5180 amplifier that HOMNI subsequently shipped to OSDA.

10. The OSD Audio Model XA5180 enjoyed great success in the marketplace and OSDA sold it online in impressive quantities for years without any

adverse incident. HOMNI remained OSDA's sole supplier of the XA5180 throughout its production run.

11. In March 2022 OSDA was accused of copyright infringement based on contents of the XA5180 Owner's Manual. The accusation came without any prior warning in the form of a "takedown notice" delivered to Amazon.com, which at the time was the major sales channel for the XA5180 amplifier.[1] Amazon responded to the takedown notice by removing the listing for the XA5180 from its website.

12. When OSDA received a copy of the takedown notice, its president Dave Chai learned that the accuser was a company called Outlaw Audio, LLC, a seller of audio components that appeared to be headquartered in Norton, Massachusetts. In response, OSDA personnel immediately began investigating Outlaw Audio by examining the product line featured on its website and by directly purchasing samples of certain Outlaw Audio components. Its investigation led Chai to conclude that a five-channel amplifier sold by Outlaw Audio, the Model 5000, was a near duplicate of the OSD Audio XA5180 and had obviously derived from the same ODM source as the XA5180, namely HOMNI. Moreover, the Model 5000 Owners' Manual proved to be nearly identical to the template that HOMNI had provided to OSDA six years earlier, save for the presence of various Outlaw Audio trademarks, logos and copyright notices throughout.

13. These discoveries prompted OSDA president Dave Chai to contact HOMNI's president Allen Lin. In a series of communications, Lin confirmed that

---

[1] A takedown notice is a notice given to a website owner under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512, subd. (f). The DMCA grants immunity from copyright infringement claims to internet service providers and website operators based on the presence of copyrighted materials on their servers or sites. The immunity is available provided that the operator did not knowingly host the infringing material and "reasonably implements" a policy for promptly removing allegedly infringing material that complies with the "safe harbor" provisions spelled out in the statute.

Outlaw Audio was indeed a client of HOMNI and that the Model 5000 had been developed from the same Carver HTA5A base product that had served as the foundation for the development of the XA5180, which accounted for the similarities in the two amplifiers. Chai further inquired about the Owner's Manual template that OSDA had received from HOMNI in connection with the development of the XA5180. In response, Lin dissembled about the template's origins but promised Chai that he would locate the files used in its creation and provide them to OSDA. He never hinted that Outlaw Audio might have created the manual or that HOMNI might not have the right to permit OSDA to use it. Based on Lin's failure to disclose such material facts surrounding the source of the template, Chai caused OSDA to retain legal counsel to contest Outlaw Audio's initially-successful effort to have the profitable XA5180 permanently delisted from the Amazon.com website.

14. The intervention of OSDA's counsel commenced a series of communications by OSDA to Amazon and refutations by Outlaw, who persisted in its position that sales of the XA5180 violated Outlaw's copyrights. The ongoing dispute over whether Amazon should relent and relist the XA5180 finally led to the filing of a lawsuit by OSDA against Outlaw Audio and some of its agents in which OSDA alleged that the defendants in that action had made deliberate false statements about its ownership of the rights to the contents of the XA5180 Owner's Manual, thereby violating the provisions of the DMCA that prohibit the uttering of false statements in connection with a takedown notice. That lawsuit, *Santos Electronics Inc. v. Outlaw Audio, LLC, et al.*, U.S.D.C. case number 8:22-cv-827 JVS (hereinafter, the "Outlaw Litigation"), commenced with the filing of OSDA's Complaint on April 18, 2022.

15. On June 3, 2022 Outlaw Audio responded to the Outlaw Litigation with counterclaims in which it accused OSDA and its President Dave Chai of their own violations of the DMCA, as well as copyright infringement, trademark infringement,

unfair competition, interference with economic relations and false advertising, all of which rested on factual propositions that OSDA had wrongfully used intellectual property that belonged to Outlaw Audio to sell its XA5180 product, and further, that OSDA had falsely inflated the true "signal-to-noise ratio" of the XA5180 in its marketing materials in order to gain an unfair competitive edge over Outlaw Audio's Model 5000.

16. The filing of the Outlaw Audio counterclaims spurred OSDA's President Chai to reach out again to Allen Lin at HOMNI to retrieve the documentation and files that would establish once and for all that it was HOMNI, rather than Outlaw Audio, that had created the disputed content of the XA5180 Owner's Manual. In those contacts, Allen Lin revealed himself to be unwilling to involve HOMNI in OSDA's legal dispute with Outlaw Audio, suggesting instead that the two sides should try to settle their quarrel. When pressed by OSDA's Chai about the documents that would confirm that HOMNI created the challenged Owner's Manual content, Lin told Chai that the files could not be produced because they had all been lost in a flood at HOMNI's manufacturing facility in mainland China.

17. The factual controversy surrounding the mysterious origin of the disputed manual did not begin to resolve itself until Outlaw Audio moved for a preliminary injunction against OSDA in the Outlaw Litigation in September 2022. Outlaw supported its request with declarations of key witnesses. One was Jonathan Lederman, a managing partner of Outlaw Audio, who averred that Outlaw had independently developed the Owner's Manual, including its text, artwork and diagrams. He stated that Outlaw Audio had hired one Gary Karapetian to handle some of this work on the manual in September 2013 and Lederman produced an invoice and evidence of payment for the work to substantiate his testimony. He also produced an email message that suggested that the Owner's Manual commissioned

by Outlaw was in its final form as of March 28, 2014. This was more than two years before OSDA was given the template for the nearly-identical Owner's Manual that was subsequently used for OSDA's XA5180 product.

18. Through the acts described hereinabove, HOMNI set the circumstances in motion that proximately resulted in significant injury to OSDA. Those injuries did not manifest until March 2022, when OSDA was first alerted to Outlaw Audio's claim that it owned the rights to the content of the XA5180 Owner's Manual by the takedown notice that Outlaw Audio served on Amazon during that month. From that point in time onward, OSDA has sustained damages as follows:

    a. OSDA incurred the cost of retaining legal counsel to first assist it in challenging the Outlaw Audio takedown notices, and later to prosecute an action in federal court against Outlaw Audio for alleged violations of the DMCA;

    b. OSDA expended further attorneys' fees and costs to defend the counterclaims that Outlaw Audio brought against OSDA and Dave Chai in the Outlaw Litigation. The attorneys' fees and costs that OSDA incurred in connection with the Outlaw Litigation total at least $348,266;

    c. In December 2023, OSDA was compelled to fund a settlement agreement with Outlaw Audio as a part of the consideration that it gave to bring an end to the Outlaw Litigation. A confidentiality agreement precludes disclosure of the amount of the payment in public filings, but the sum paid well exceeds the $75,000 minimum amount in controversy for diversity jurisdiction cases in the federal courts;

    d. OSDA experienced a significant loss of profits through lost sales of the XA5180 and other models in online commerce, first through the delisting of the XA5180 by Amazon.com and other sites, and then as

         the result of certain terms of the confidential agreement that resolved the Outlaw Litigation. OSDA's lost revenue to date on these sales exceeds $1.8 million, which would have yielded profits to OSDA of more than $720,000. The amount OSDA's lost profits are yet to be fully realized and can be expected to grow in the coming months and years;

    e. Finally, the terms of the confidential settlement agreement in the Outlaw Litigation inflicted additional ancillary losses on OSDA which cannot be divulged in detail in this pleading but will be proved at the time of trial.

19. Based on the foregoing developments and evidence, OSDA has reconstructed the full sequence of events that were hidden from it until well after the Outlaw Litigation was underway. All roads in that reconstructed scenario lead back to HOMNI, whose lack of integrity, honesty and candor placed the unwitting OSDA, its ODM client, on the path to a costly disaster.

20. OSDA is informed and believes, and thereon alleges HOMNI's Carver HTA5A model was developed simultaneously with its co-development of the Outlaw Audio Model 5000. Ordinarily, HOMNI, as the ODM partner, would develop the Owner's Manual at its own expense but for reasons that are presently not known to OSDA, in this instance Outlaw Audio undertook the development of a manual for its Model 5000 independently. A digital file with the final version of the Model 5000 Owner's Manual must have been transmitted to HOMNI so that it could be printed and packaged with the Model 5000 units in HOMNI's production run.

21. For whatever reason, HOMNI decided not to independently produce an Owner's Manual for its own Carver HTA5A amplifier. Instead, it opted to simply co-opt the Outlaw Audio Model 5000 Owner's Manual for that purpose. At this time it is unknown to OSDA whether Outlaw Audio gave permission to HOMNI for such

use of its work, but whether it did or not, it is significant that that HOMNI's alteration of the Outlaw digital files to create the HTA5A version required, among other things, the obliteration of Outlaw Audio copyright notices that were present in the original, leaving no doubt that HOMNI personnel were fully aware that Outlaw Audio claimed property rights in the original material.

22. Later, when HOMNI worked with OSDA using the Carver Model HTA5A as the starting point for OSDA's Model XA5180, HOMNI again decided to avoid incurring the substantial expense that the development of an owner's manual specific to the OSDA product would have entailed. Instead, HOMNI simply supplied OSDA with the HTA5A Owner's Manual as a template, all the while concealing from OSDA crucial facts – *facts that were clearly known to it* – that Outlaw Audio claimed a copyright on the work's contents and that HOMNI lacked the right to allow OSDA to use it.

## FIRST CLAIM FOR RELIEF

### For Breach Of Contract

23. Plaintiff OSDA incorporates by reference as though set forth herein each and every allegation set forth in paragraphs 1 through 22.

24. Although the terms of the relationship between HOMNI and OSDA were never reduced to a unified writing, over the co-development of several OSDA components with HOMNI as the ODM, OSDA and HOMNI developed a course of dealing in which the essential terms were always the same. OSDA described the basic product type as well as the technical and cosmetic specifications it desired for a new item. HOMNI then provided a quote to develop a working sample of the product that matched the specifications. This course of dealing became an implied-in-fact contract between HOMNI and OSDA. Included in this implied-in-fact contract were terms that once a working sample had been approved by OSDA, HOMNI would be the sole manufacturer during its production run. As part and

-9-
COMPLAINT

parcel of each project HOMNI would provide the product itself, packaging design and materials including graphics, cartons and die-cut in-box dunnage; and an English-language owner's manual that was specific to the product. At all times it was understood between HOMNI and OSDA through their established course of dealings that the Owner's Manual would be included with each sale of the product, and therefore its contents would need to be entirely free of the proprietary claims of third parties.

25. At all times relevant to the allegations herein, it was foreseeable to HOMNI that OSDA would be exposed to liability and a possible disruption of sales if HOMNI supplied it with an Owner's Manual that was subject to the property rights of others.

26. HOMNI breached this contract when, in connection with its work on the development of the Model XA5180, it provided OSDA with an Owner's Manual for the product without ever disclosing it that the contents of that manual were subject to the intellectual property claims of a third party that competed with OSDA, Outlaw Audio.

27. As the direct consequence of the breaches described herein, OSDA has sustained damages in the as are alleged at paragraph 18 of this Complaint.

## SECOND CLAIM FOR RELIEF

### For Fraudulent Concealment

28. Plaintiff OSDA incorporates by reference as though set forth herein each and every allegation set forth in paragraphs 1 through 22.

29. In the course of the development of the Model XA5180 Defendant HOMNI was in the possession of certain material facts that were not known to OSDA. These were the facts that HOMNI did not own the right to permit OSDA to lawfully use the content of the HTA5A Owner's Manual and that Outlaw Audio claimed excusive intellectual property rights in that material.

30.     Plaintiff OSDA could not have discovered the fact of Outlaw Audio's claim over the contents of the HTA5A Owner's Manual since it was at all times an outsider to the relationship between HOMNI and Outlaw Audio. Moreover, because HOMNI had acted affirmatively to obliterate the existing Outlaw Audio copyright notices in the material, OSDA was actively prevented from protecting itself by rejecting HOMNI's offer of the HTA5A Owner's Manual and insisting instead that HOMNI create an owner's manual that was specific to the product that HOMNI was developing for OSDA.

31.     At all relevant times, HOMNI knew that if it failed to alert OSDA of the claims of Outlaw Audio to the contents of the HTA5A Owner's Manual, it would create a risk of serious harm to OSDA since Outlaw Audio might accuse OSDA of copyright infringement and take legal measures against OSDA to curtail its sale of the XA5180 product. Even so, HOMNI did nothing to alert OSDA to the danger because it knew that if it acted with candor and integrity, OSDA would insist that HOMNI supply an Owner's Manual that was free of third-party intellectual property claims.  Plaintiff is informed and believes, and thereon alleges that HOMNI was unwilling to cut into its anticipated profits by bankrolling the creation of an original Owner's Manual that could lawfully be used by OSDA so it was content to subject OSDA to the risk of legal sanctions and lost sales by saying nothing about the source of the HTA5A Owner's Manual while simply hoping that no adverse consequences would ever ensue from its secret decision.

32.     Plaintiff OSDA was harmed by the deliberate failure of HOMNI to disclose the material facts about the provenance of the HTA5A Owner's Manual in the manner described in paragraph 18 of this Complaint.

33.     The actions of Defendant HOMNI as alleged hereinabove, were committed fraudulently, maliciously, oppressively, and with a conscious disregard for the rights of Plaintiff OSDA within the meaning of Civil Code section 3294.

Accordingly, in addition to damages to compensate them for the actual losses proximately resulting from said Defendants' actions, Plaintiff shall seek to recover punitive and exemplary damages in a sum sufficiently large to punish the Defendant and make an example of it.

## THIRD CLAIM FOR RELIEF

### For Negligent Interference With Prospective Economic Advantage

34. Plaintiff OSDA incorporates by reference as though set forth herein each and every allegation set forth in paragraphs 1 through 22.

35. At all times relevant to the allegations of this Complaint, OSDA had relationships with third-party online vendors such as Amazon.com and Crutchfield.com that provided a significant economic benefit to Plaintiff by allowing it to offer its products to an audience of potential customers that was exponentially larger than the quantity of customers who might seek out and visit OSDA's own proprietary website.

36. Defendant HOMNI was aware that a large percentage of OSDA's products were marketed and sold through popular third-party websites, including products that were co-developed by HOMNI in its capacity as an ODM. HOMNI was further aware that if it failed to act with reasonable care to ensure that OSDA was supplied only with products that did not infringe upon the intellectual property rights of others, OSDA's access to those websites would be jeopardized since under the DMCA their operators are subject to a legal obligation to police their sites for infringing material and to act promptly to remove product listings that are the subject of takedown notices.

37. Defendant HOMNI failed to act with reasonable care when it supplied OSDA with Owner's Manual content that was subject to the intellectual property rights of others. It not only failed to disclose that information to OSDA so that it

could protect itself, but acted affirmatively to keep OSDA from learning of those claims by removing the Outlaw Audio copyright notices from the material, all while knowing that the infringing Owner's Manual content would be distributed and disseminated among OSDA's customers and competitors.

38. As the proximate result of HOMNI's negligence as described herein, OSDA lost product listings on Amazon.com and Crutchfield.com. The de-listings had a substantial negative impact on OSDA's sales of goods, and those losses have translated into significant lost profits.

## FOURTH CLAIM FOR RELIEF

### For Contribution and Equitable Indemnity

39. Plaintiff OSDA incorporates by reference as though set forth herein each and every allegation set forth in paragraphs 1 through 22.

40. When Plaintiff OSDA was sued by Outlaw Audio on its cross-complaint in the Outlaw litigation, the claims centered on allegations that OSDA had used material in its Model XA5180 Owner's Manual that infringed on its intellectual property rights. Outlaw Audio further alleged that OSDA had unfairly competed with it by advertising a "signal to noise ratio" that was superior to that which was actually realized when the XA5180 was tested.

41. Both of Outlaw Audio's litigated claims against OSDA were the result of wrongdoing in which HOMNI played the pivotal role. As has been alleged in more detail in paragraphs 11 through 22 of this Complaint, HOMNI supplied the content for the XA5180 Owner's Manual to OSDA knowing that it was subject to intellectual property claims of Outlaw Audio. HOMNI was also solely responsible for providing OSDA with the signal-to-noise ratio results for the Model XA5180 that formed the factual basis of Outlaw Audio's claim that OSDA had unfairly competed with Outlaw Audio's five-channel amplifier by misrepresenting the signal-to-noise ratio of the XA5180.

42. Plaintiff OSDA was thus forced to answer for wrongdoing that was attributable in whole or in part to Defendant HOMNI. With no participation or contribution from HOMNI, OSDA funded the entirety of the settlement that terminated the Outlaw Litigation in December 2023.

## FIFTH CLAIM FOR RELIEF

### For Implied Contractual Indemnity

43. Plaintiff OSDA incorporates by reference as though set forth herein each and every allegation set forth in paragraphs 1 through 22 and paragraphs 24 through 26.

44. Both of Outlaw Audio's litigated claims against OSDA were the result of wrongdoing in which HOMNI played the pivotal role. As has been alleged in more detail in paragraphs 11 through 22 of this Complaint, HOMNI supplied the content for the XA5180 Owner's Manual to OSDA knowing that it was subject to intellectual property claims of Outlaw Audio. HOMNI was also solely responsible for providing OSDA with the signal-to-noise ratio results for the Model XA5180 that formed the factual basis of Outlaw Audio's claim that OSDA had unfairly competed with Outlaw Audio's five-channel amplifier by misrepresenting the signal-to-noise ratio of the XA5180.

45. The contract between and among OSDA and HOMNI contained an implied term that in the event that HOMNI's performance of its obligations exposed its ODM client OSDA to liability to a third party because some portion of the product that HOMNI supplied infringed on the intellectual property rights of others, or that the HOMNI-supplied specifications concerning the product proved to be misleading, HOMNI would indemnify OSDA and hold it harmless against the costs of such claims.

46. Plaintiff OSDA was thus forced to answer for wrongdoing that was attributable in whole or in part to Defendant HOMNI. With no participation or

contribution from HOMNI, OSDA funded the substantial monetary settlement that terminated the Outlaw Litigation in December 2023.

## PRAYER

WHEREFORE, Plaintiff requests the Court enter judgment against Defendants as follows:

**ON THE FIRST CAUSE OF ACTION:**

1. For breach of contract damages in a sum in excess of $1.5 million, according to proof;

**ON THE SECOND CAUSE OF ACTION:**

2. For the recovery of damages proximately caused by Defendant HOMNI's failure to disclose material facts in a sum in excess of $1.5 million, according to proof;

3. For exemplary and punitive damages in an amount deemed by the Court to be fair and just;

**ON THE THIRD CAUSE OF ACTION:**

4. For the damages that were proximately caused by Defendant HOMNI's negligent interference with Plaintiff's business relationships in a sum in excess of $1.5 million, according to proof;

**ON THE FOURTH CAUSE OF ACTION:**

5. For full and complete equitable indemnity against the costs and expenses incurred by Plaintiff defend itself in the Outlaw Litigation and the costs of resolving those claims in a sum in excess of $1.5 million, or according to proof;

**ON THE FIFTH CAUSE OF ACTION:**

6. For full and complete contractual indemnity against the costs and expenses incurred by Plaintiff defend itself in the Outlaw Litigation and the costs of resolving those claims in a sum in excess of $1.5 million, or according to proof;

**ON ALL CAUSES OF ACTION:**

7. For prejudgment interest on all sums found to be owing at the highest legal rate;

8. For Plaintiff's costs of suit herein;

9. For such other and further relief as the Court may deem fair and just under the circumstances.

Dated: March 4, 2024

CHANG & COTÉ
*A Limited Liability Partnership*

By: /s/ Rodney W. Bell
Rodney W. Bell
Audrey L. Khoo
*Attorneys for Plaintiff SANTOS ELECTRONICS INC.*

## DEMAND FOR JURY TRIAL

Plaintiff SANTOS ELECTRONICS INC. requests trial by jury on all issues so triable.

Dated: March 4, 2024

CHANG & COTÉ
*A Limited Liability Partnership*

By: /s/ Rodney W. Bell
Rodney W. Bell
Audrey L. Khoo
*Attorneys for Plaintiff SANTOS ELECTRONICS INC.*